IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MORRIS SPEIGHT-BEY,**

        Petitioner,

v.                                                                                 Civil Action No. 3:16cv79
                                                                                              (GROH)

**CHARLES WILLIAMS,[1]**

        Respondents.

## REPORT AND RECOMMENDATION

### I. Introduction

On June 13, 2016, the *pro se* Petitioner, an inmate incarcerated at FCI Gilmer in Glenville, West Virginia, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging the Federal Bureau of Prisons' ("BOP") calculation of his sentence. ECF No. 1. On June 14, 2016, Petitioner filed a motion to proceed as a pauper and a copy of his Prisoner Trust Fund Account Report with its Ledger Sheets. ECF No. 4 & 5. By Order entered July 21, 2016, Petitioner was granted leave to proceed as a pauper but directed to pay the five dollar filing fee. ECF No. 7. On August 29, 2016, an Order to Show Cause was entered. ECF No. 9. In response, on September 8, 2106, Petitioner filed a motion for an extension of time in which to pay the filing fee, styled as Reason to the Order to Show Cause. ECF No. 11. By Order entered September 12, 2016, Petitioner was granted the extension of time. ECF No. 12. Petitioner paid the five dollar filing fee on October 3, 2016. ECF No. 14.

---

[1] In its memorandum in support of its dispositive motion, the Respondent notes that pursuant to Federal Rule of Civil Procedure 25(d)(1), which permits substitution of parties for public officers named as parties in an action, the current Warden of FCI Gilmer, Jennifer Saad should be substituted for former Warden Charles Williams. ECF No. 20-1, n1 at 1. The Clerk of Court will be so instructed.

1

On October 5, 2016, the Warden was directed to show cause why the writ should not be granted. ECF No. 15. The Warden moved for an extension of time in which to file an answer on October 25, 2016. ECF No. 17. By Order entered the following day, the motion was granted. ECF No. 18. On November 26, 2016, the Respondent filed a Motion to Dismiss or in the Alternative, Motion for Summary Judgment. ECF No. 20. Because Petitioner was proceeding *pro se,* a Roseboro[2] Notice was issued on November 28, 2016. ECF No. 21. On December 2, 2016, Petitioner filed a Motion Requesting Relief in an Order from the Two Judgment and Commitment Orders of the Two Judges, Judge Goodrich, and Judge Michael Rankin of the superior Court of the District of Columbia, Washington, DC 2001/and Because [of] Respondent['s] Failure to Respond by the Deadline of November 25, 2016. ECF No. 22. By Order entered December 5, 2016, the motion was construed as a motion for default judgment and denied. ECF No. 24. On December 19, 2016, Petitioner filed a response to the Roseboro Notice, styled as Motion and Affirmation to a[n] Unlawful Aggregated Misdemeanor Consecutive Sentence to a Felony Sentence Judgment and Commitment Order, as Evidence in Support and Affidavit, or in the Alternative, as a Summary Judgment and Proof of Claim. ECF No. 26.

## II. Factual and Procedural History

### A. Convictions and Sentences

On April 2, 1991, in in Case No. F-12799-90 in the Superior Court of the District of Columbia, Petitioner was sentenced to a "not less than 5 nor more than 15 year" term of imprisonment for the felony of Burglary 1 [ECF No. 20-3 at 3], along with two misdemeanor sentences: a 6 month consecutive term of imprisonment for Unauthorized Use of a Vehicle and a 1 year concurrent term of imprisonment for Destroying Property, in Case No. F-10451-90. ECF

---

[2] Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

No. 20-3 at 2. The sentences were aggregated to form a total sentence of 15 years, 6 months. See Declaration of Jan Hanks, BOP Management Analyst, Designation and Sentence Computation Center ("Jan Hanks Decl."), ECF No. 20-2, ¶ 13, at 2. At the time, Petitioner was incarcerated in the D.C. Department of Corrections at Lorton. Id., ¶ 14 at 2.

On June 14, 1999, the Petitioner was paroled from his Superior Court of the District of Columbia 15 year, 6 month aggregated sentence. ECF No. 20-3 at 5. His parole was to continue in effect until March 3, 2009. Id.

On September 2, 2005, the United States Parole Commission ("USPC") issued a warrant for the Petitioner's arrest.[3] Id. at 8. The warrant application indicates it was based on a violation date of July 5, 2005. Id. at 9.

On February 25, 2007, the Petitioner completed a prior North Carolina state sentence and his USPC warrant was executed the same day. See Jan Hanks Decl., ECF No. 20-2, ¶ 17 at 2, and ECF No. 20-3 at 12. The parole violator sentence for Superior Court of the District of Columbia Case No. F-12799-90 and Case No. F-10451-90 was deemed to have commenced the day that this warrant was executed. See Jan Hanks Decl., ECF No. 20-2, ¶ 18 at 2. At that time, Petitioner's remaining parole violator term to serve was 3,491 days (9 years, 6 months and 22 days). ECF No. 20-3 at 17.

On July 31, 2007, the USPC entered a Notice of Action ("NOA") revoking Petitioner's parole. None of the time spent on parole was credited, and the USPC granted a parole effective date of January 13, 2008, after service of 28 months. Id. at 15. The USPC noted that the parole violations charged were failure to submit to drug testing; violation of special conditions (Drug

---

[3] This warrant, along with its application, contains a typographical error regarding the total length of the aggregate sentence, misstating it as an aggregate 16 year, 6 months sentence. See ECF No. 20-3 at 8 & 9.

3

Aftercare); possession of drug paraphernalia and reckless driving; and possession of stolen goods. Id.

On January 11, 2008, the Petitioner was released on parole in Superior Court of the District of Columbia Cases #F-12799-90 and #F10451-90, with 3,168 days (3,170 days, with 2 public law days) days remaining on his sentence. Id. at 17 ("actual satisfaction date" and "days remaining").

On June 23, 2008, the USPC issued another warrant for Petitioner's arrest, with 3,170 (with 2 days of public law added back in) days remaining to be served. Id. at 20. On January 12, 2009, the United States Marshals Service ("USMS") executed the parole warrant in the Eastern District of North Carolina. Id. at 22.

On November 11, 2009, the USPC entered another NOA, revoking Petitioner's parole. None of the time spent on parole was credited, and Petitioner was given a re-parole effective date of December 10, 2009, after the service of 11 months. Id. at 25. The NOA indicated that the charged parole violation was failure to report for supervision. Id.

On December 10, 2009, the USPC issued another NOA, re-opening and retarding the parole effective date of December 10, 2009 by 60 days and entering a new parole effective date of February 8, 2010. Id. at 29.

On February 8, 2010, Petitioner was again released on parole, with 2777 days remaining to be served. Id. at 32 ("actual satisfaction date" and "days remaining").

On May 28, 2010, the USPC issued another parole violation warrant for Petitioner for violating "one or more conditions of his release." Id. at 34. Petitioner had incurred new charges in Washington, D.C., specifically, assault with a deadly weapon, "theft II from auto," unlawful

4

entry, and receiving stolen property. Id. at 35. On September 28, 2010, the USPC warrant was executed by the USMS, and Petitioner was arrested in the District of Columbia. Id. at 38.

On March 18, 2011, as a result of a February 7, 2011 hearing, the USPC entered an NOA revoking the Petitioner's parole and crediting none of the time spent on parole. ECF No. 20-3 at 41. Petitioner was continued to a presumptive re-parole date of December 27, 2012, after service of 27 months. Id. The USPC noted that the violations of release charged were: failure to submit to drug testing; failure to report to supervising officer as directed; a new violation of law (possession of cocaine); and other new violations of law (theft II from auto; unlawful entry; and assault). Because of insufficient evidence, no finding was made regarding the additional new law violation charges of assault with a deadly weapon and receiving stolen property. Id. at 41 – 42. The presumptive parole date was conditioned upon Petitioner maintaining good institutional conduct and the development of a suitable release plan. Id. at 41.

On September 27, 2012, Petitioner transferred from FCI Butner in North Carolina to Hope Village, a BOP Residential Reentry Center in Washington D.C. Id. at 45. On November 13, 2012, Petitioner was observed leaving the facility without authorization, carrying all of his belongings. Id. The BOP and USMS were immediately notified and Petitioner was placed on escape status. Id. He was apprehended by the USMS on December 29, 2012. Id. at 47.

On January 9, 2013, as a result of Petitioner's violations of the BOP's Hope Village institutional rules, the USPS issued another NOA, reopening and retarding Petitioner's December 27, 2012 presumptive parole date. Id. at 49. The USPC noted that Petitioner had been found guilty by a disciplinary hearing officer ("DHO") of "escape from escort" and that a rescission hearing would be scheduled on the next available docket. Id.

On July 29, 2013, a new NOA was issued, noting no change in a presumptive parole date of February 10, 2014 and a parole effective date of February 10, 2014. Id. at 51.

On February 10, 2014, the Petitioner paroled from his sentence with 1583 days remaining to be served on Superior Court of the District of Columbia Case Nos. F-12799-90 and F-10451-90. Id. at 55 ("actual satisfaction date" and "days remaining").

On August 6, 2014, a Detainer based on a federal parole violation warrant by the USPC was issued against Petitioner who, having been arrested, was incarcerated in the D.C. Jail Central Detention Facility. Id. at 57 – 58. The Detainer was based upon another new parole violation from Superior Court of the District of Columbia Case Nos. F-12799-90 and F-10451-90; the remaining parole time to be served was 1,583 days. See Jan Hanks Decl., ECF No. 20-2, ¶ 38 at 4.

On December 30, 2014, in the Superior Court of the District of Columbia, Petitioner was sentenced to a term of 42 months of imprisonment for Attempted Burglary in Case Number 2014 CF3 012838. Id. at 60. Petitioner is projected to be released from this 42-month sentence for Attempted Burglary on August 07, 2017. Id. at 63. He will be released pursuant to the USPC's August 6, 2014 Detainer. Id.; see also Id. at 57.

### III. Contentions of the Parties

**A. The Petition**

The petition is not a model of clarity and was not filed with a memorandum in support. It appears that Petitioner is attempting to challenge "a false authorization" that occurred when his 1991 sentences for his Superior Court of the District of Columbia felony conviction in Case No. F-12799-90 for Burglary and his two misdemeanor convictions in Case No. F-10451-90 for Unauthorized Use of a Vehicle and Destroying Property were aggregated. Petitioner appears to

6

contend that he is being held on a USPC detainer, pending a revocation hearing on the two cases, that his felony sentence is unlawful and his "misdemeanor sentence[s] are consecutive sentences, and [they] are calculated illegally together. The above sentence need[s] to be corrected, because I served the 6-months back in the year of 1991." ECF No. 1 at 5.

Petitioner contends that he has exhausted his administrative remedies with regards to his claims but that the BOP "refused to correct it." Id. at 8.

As relief, he requests that this court "enforce the Order that the District of Columbia Judges" sentenced him to, and direct that his 6-month misdemeanor sentence run consecutive to any other sentence, and his 1-year misdemeanor sentence run concurrent to any other sentence. Id.

B. **Motion to Dismiss or in the Alternative, Motion for Summary Judgment**

The Respondent concedes that Petitioner has exhausted his administrative remedies. Jan Hanks Decl., ECF No. 20-2, ¶ 42 at 4. Respondent contends that the petition should be dismissed or summary judgment granted in its favor because:

1) Petitioner's misdemeanor and felony sentences were properly combined [ECF No. 20-1 at 7]; and

2) Petitioner is not entitled to receive credit for time spent on parole. Id. at 9.

C. **Petitioner's Motion and Affirmation to a[n] Unlawful Aggregated Misdemeanor Consecutive Sentence to a Felony Sentence Judgment and Commitment Order, as Evidence in Support and Affidavit, or in the Alternative, as a Summary Judgment and Proof of Claim**

Petitioner reiterates his claims and attempts to refute the Respondent's arguments on the same. He insists that his consecutive misdemeanor in Case No. F-10451-1990 clearly states that it is "not to run to any other sentence." ECF No. 26 at 1. Further, he argues, he already served the time for this misdemeanor sentence in 1991, and "completed and . . . discharged . . . this"

7

sentence before he began serving his 5-to-15 year sentence for the burglary felony in Case No. F-12799-1990. Id. He contends that his due process rights have been violated by these "color of law; ex-post-facto-clause procedures[.] Id. at 2. He asks the court to "release me as soon as possible or in the alternative to correct the above injury by reducing the six month aggregated to the 5 to 15-years unlawfully." Id. He contends that this case has "never been about good-time, and . . . [has] never been about parole, but "The Judgment and Commitment Order should be honor[ed] and stay as it was ordered[.]" Id.

## IV. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would

entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

9

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. <u>Miller v. Federal Deposit Ins. Corp.</u>, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id.</u> "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. <u>Anderson</u>, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Industrial Co. V. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 1986).

Although *pro se* petitions are to be liberally construed as set forth in <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), habeas petitions must meet heightened pleading requirements. <u>McFarland v. Scott,</u> 512 U.S. 849 (1994). "[N]otice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." <u>Blackledge v. Allison</u>, 431 U.S. 63, 75, n. 7 (1977) (internal quotations omitted). A habeas petitioner must come forth with evidence that a claim has merit. <u>Nickerson v. Lee</u>, 971 F. 2d 1125, 1136 (4th Cir. 1992), cert. denied, 507 U.S. 923 (1993). Unsupported, conclusory allegations do not entitle a habeas petitioner to relief. <u>Id.</u> The requirement of liberal construction does not mean that the court can

ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court.  Weller v. Dept. of Social Services, 901 F.2d 387 (4th Cir. 1990).

## V. Analysis

### A. Aggregated Felony and Misdemeanor Sentences

A District of Columbia prisoner is entitled to habeas relief if he establishes that his "custody is in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

At one time, there existed a "Board of Parole . . . for the penal and correctional institutions of the District of Columbia," D.C. Code § 24-401.01(a) (2001), which determined an offender's suitability for parole. However, in 1997, Congress overhauled the District of Columbia's government, including the parole system, through the National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act."), Pub. L. No. 105-33, §11231(a)(1), 111 Stat. 712, 745, D.C. Code §24-1231(a). The Revitalization Act abolished the D.C. Board of Parole, transferring responsibility for the incarceration and treatment of existing and future D.C. Code felony offenders with the BOP, but did not change the manner or order of their sentences. See Jan Hanks Decl., ECF No. 20-2, ¶ 43 at 4.  Therefore, since August 5, 1998, the USPC has conducted the hearings and decided the requests for parole of all persons convicted of violating the D.C. Code.  Effective August 5, 2000, the USPC also was given the responsibility of supervising parolees and revoking parole. See §11231(a)(2) of the Act, codified at D.C. Code §24-131(a)(2).  The USPC is now vested with discretion to determine a District of Columbia prisoner's eligibility for parole. See United States v. Addonizio, 422 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979).

Nonetheless, prior to August 5, 1998, the D.C. Parole Board conducted the parole hearings for D.C. Code offenders, applying guidelines it formally adopted in 1985 and published in the District of Columbia Municipal Regulations in 1987 ("1987 Regulations"). Upon assuming the D.C. Board's jurisdiction, the USPC began a process of revising the regulations for determining D.C. Code offenders' suitability for parole. See Sellmon v. Reilly, 551 F. Supp. 2d 66, 72-73 (D.D.C. 2008)(discussing revisions). The revisions were codified at 28 C.F.R. §§ 2.70-2.107 in 2000 ("2000 Regulations"). The 2000 Regulations specify that they are applicable to a D.C. Code offender, whose first parole hearing would occur after August 5, 1998. See 28 C.F.R. § 2.80(a)(5).

Here, Petitioner's claims are unintelligible at times. Liberally construed, Petitioner appears to simultaneously claim both that his felony sentence is unlawful and his "misdemeanor sentence[s] are consecutive sentences" that are illegally calculated together [ECF No. 1 at 5], and that the judgment in Superior Court of the District of Columbia Case No. F-10451-90 for his misdemeanor 6-month consecutive sentence "clearly state[]s that it is not to run to any other sentence[]," and that he finished serving this sentence before he began serving the 5-to-15 year sentence on the felony charge in Superior Court of the District of Columbia Case No. F-12799-90. See ECF No. 26 at 1. The Government counters that it has calculated Petitioner's sentence in accordance with all applicable laws and regulations. ECF No. 20-1 at 7 – 9.

Petitioner's claims will be taken in order.

To the extent that Petitioner is arguing that his felony sentence for burglary is unlawful, Petitioner offers no rationale for why this is so.

A review of the Superior Court of the District of Columbia's April 2, 1991 Judgment and Commitment/Probation Order for that offense clearly says that Petitioner was sentenced to "not

less than five (5) no[r more than] fifteen (15) years. Credit for time served" and that Petitioner was ordered to "be committed to the custody of the Attorney General for the period imposed[.]" ECF No. 20-3 at 3. Petitioner's 15 year sentence for this felony was aggregated with the 1 year concurrent sentence for destruction of property and the 6 month consecutive sentence for unauthorized use of a vehicle, to give him a total aggregate fifteen and a half year sentence. Aggregated sentences were lawful at the time Petitioner's sentence was imposed and up until the August 11, 2000 effective date of the Sentencing Reform Amendment Act ("SRAA"). See *infra* at 14. Petitioner served roughly 8 years, 2 months and 12 days of that aggregated sentence before he was paroled on June 14, 1999. At that time, his total parole was determined to be roughly 9 years and 8 and a half months, with an expiration date of March 3, 2009. Had he not continuously violated the terms of his parole and committed multiple new criminal offenses, his parole for his aggregated sentences, including the burglary conviction, would have continued uninterrupted and his parole for these offenses would have been completely served almost 8 years ago. Petitioner's claim that his felony sentence is unlawful is an unsupported, conclusory allegation, which is an insufficient basis for habeas relief. Nickerson v. Lee, 971 F. 2d at 1136. This claim lacks merit and should be dismissed as insufficiently pled.

Next, to the extent that Petitioner is arguing that the Superior Court of the District of Columbia/the BOP/and/or the USPC "illegally" aggregated his misdemeanor sentences with his felony sentence, the undersigned agrees with the Respondent that Petitioner may be confused as to which Act governs his sentence calculation. ECF No. 20-1 at 8. As noted *supra,* even before the Revitalization Act, offenders under District of Columbia law were committed to the custody of the Attorney General of the United States or his designee, and it was directed that the Attorney General "shall designate the places of confinements where the sentences of all such persons shall

be served." D.C. Code § 24-201.26. The law changed on August 11, 2000 with the SRAA, restricting the BOP to taking only felons into custody, but under the law in effect in 1991 when Petitioner was sentenced, District of Columbia Code permitted the BOP to take Petitioner into custody for misdemeanors. Baker v. United States Parole Comm'n, 107 F. Supp. 3d 56, 60 (D.D.C. 2015). Petitioner's "sentences were "governed by the Omnibus Criminal Justice Reform Amendment Act, which allowed for misdemeanors to be combined with other misdemeanor and felony sentences." Id. (internal brackets and punctuation removed). Accordingly, the D.C. Department of Corrections, which was originally charged with computing Petitioner's sentences, lawfully aggregated the misdemeanor and felony sentences to create one parole eligibility date. See Jan Hanks Decl., ECF No. 20-1, ¶ 44 at 4. Therefore, once Petitioner came into BOP custody, the BOP was obliged to compute his sentences the way they had been computed by the D.C. Department of Corrections. See Id., ¶ 45 at 5. Under the SRAA, effective August 11, 2000, misdemeanor sentences may no longer be aggregated, and therefore, for inmates subject to the SRAA, the BOP can only calculate felony sentences. Because Petitioner's original 1991 sentences were imposed before that date, they are not governed by the SRAA. See Id., ¶ 46 – 47 at 5. Accordingly, Petitioner's aggregated felony and misdemeanor sentences are legal and Petitioner's claim in this regard must be dismissed.

To the extent that Petitioner is arguing that he had already completed service of his six-month consecutive sentence before he began serving the 5-to-15 year sentence for the burglary felony, Petitioner misunderstands the definition of an aggregate sentence. An aggregate sentence is defined in 18 U.S. Code § 3584:

(a) Imposition of Concurrent or Consecutive Terms.

If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an

> undischarged term of imprisonment, the terms may run concurrently or consecutively . . . Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.
>
> . . .
>
> (c) Treatment of Multiple Sentence as an Aggregate.
>
> Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment.

18 U.S. Code § 3584.

Because Petitioner's 1991 5-to-15 year sentence on the burglary felony and his two misdemeanor sentences of a 6 month consecutive term of imprisonment for the unauthorized use of a vehicle and a 1 year concurrent term of imprisonment for destroying property were imposed at the same time, and the six month term was ordered to run consecutively to any other sentence, the 5-to-15 year felony sentence and the 1 year concurrent misdemeanor ran together and the six-month term ran consecutive, for a total aggregate term of 15 and a half years.  Because the sentence was aggregated, pursuant to 18 U.S. Code § 3584(c), for administrative purposes, it is treated as a single, aggregate term of imprisonment, thus it cannot be said that any one portion of it is served before another is begun.  This claim should be dismissed.

## B. **Parole and Detainer**

Petitioner specifically denies that he is challenging the amount of parole he has to serve or how much good time credit he has earned, asserting that his § 2241 claims "have never been about good-time, and . . . [have] never been about parole, but "The Judgment and Commitment Order should be honor[ed] and stay as it was ordered[.]" ECF No. 26 at 2.  The Respondent concurs, asserting that "Petitioner's argument does not appear to assert that he is entitled to credit for any time spent on parole[.]"  ECF No. 20-1 at 9.

## C. *Ex Post Facto* Violation

Petitioner insists that his consecutive misdemeanor in Case No. F-10451-1990 clearly states that it is "not to run to any other sentence" and that he "completed and . . . discharged . . . this" sentence in 1991 before he began serving his 5-to-15 year sentence for the felony in Case No. F-12799-1990. ECF No. 26 at 1. Further, although nowhere mentioned in his petition, in response to the Respondent's dispositive motion, for the first time Petitioner contends that he has suffered a due process violation as a result of the application of an *ex post facto* law. Id. at 2. His argument, such as it is, in support of this claim, states that

> [m]y Constitutional right and Due Pro-cess Rights have been violated by this, "color of law; ex-post-facto-clause procedures," and their unlawful rule is not authorized, and have no Jurisdiction to the states or laws of Congress, but in their measures without merit of the law have injured me, within therein all caps, my name and account of trust, liability taxed in the Business for the benefit of its Agencies, and or its Agents as Employees the trustees incorporated have breached their contract in their Proxy Provisions by this unlawful Act and injury.

Id. (reproduced here with all errors in original).

Liberally construed, the undersigned presumes that consistent with his claim that his sentences were illegally aggregated, Petitioner is attempting to argue that the regulations in effect in 1991 at the time he was convicted were later changed, to his detriment.

The United States Constitution prohibits any State from passing an "*ex post facto* Law." U.S. Const. art. 1, § 9, cl.3. The clause "is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 504, 115 S. Ct. 1597, 131 L. Ed. 2d 588 (1995) (quoting Collins v. Youngblood, 497 U.S. 37, 43, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990)). "Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept," if, for example, the law as applied to a particular prisoner's sentence "created a significant risk of increasing . . .

16

punishment." Garner v. Jones, 529 U.S. 244, 250, 255, 120 S. Ct. 1362, 146 L. Ed. 2d 236 (2000). A successful *ex post facto* claim requires that a petitioner show that he has faced a substantial risk of increased punishment by application of the Commission's regulations. See Richardson v. Pennsylvania Bd. of Prob. & Parole, 423 F.3d 282, 291-94 (3rd Cir. 2005).

Here, Petitioner makes no such showing. He merely makes an unsupported, conclusory allegation that he has suffered an *ex post facto* violation. He has not even attempted to argue, let alone shown that he suffered a substantial risk of increased punishment as a result of a change in the law after he was sentenced for his 1991 convictions. The basis for his argument is unintelligible.

Habeas petitioners must come forth with evidence that a claim has merit. Nickerson v. Lee, 971 F. 2d at 1136. Further, Rule l(b) of the Rules Governing Section 2254 Cases permits the Court to "apply these rules to a habeas corpus petition [under § 2241]," and Rule 12 makes the Federal Rules of Civil Procedure applicable to habeas petitions "to the extent that they are not inconsistent with any statutory provisions or these rules." Unlike Fed. R. Civ. P. 8(a)'s minimal pleading requirements, the Rules Governing Habeas Corpus Cases require a more detailed statement. The habeas rule instructs the petitioner to "'specify all the grounds for relief available to [him]'" and to "'state the facts supporting each ground.'" Mayle v. Felix, 545 U.S. 644, 649 (2005). This "demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to 'show cause why the writ should not be granted'" or to summarily dismiss the petition. Id. at 656 (quoting 28 U.S.C. § 2243). The demand is necessary also because the government, in responding to a show cause order, "must 'address the allegations in the petition.'" Id. (quoting Gov' g Rule 5(b)).

Petitioner's *ex post facto* claim fails to comply with the habeas pleading rules, and it does not otherwise provide any basis for habeas relief. See Mayle, 545 U.S. at 655 ("Notice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error.") (quoting Advisory Comm. Note on Habeas Corpus Rule 4) (internal bracket and quotation marks omitted). Rather, this claim, or at least the argument in purported support of it, presents the type of fantastic or delusional scenarios warranting dismissal of a case as frivolous. See Best v. Kelly, 39 F.3d 328, 330-31 (D.C. Cir. 1994) (a court may dismiss claims that are "essentially fictitious" -- for example, where they suggest "bizarre conspiracy theories . . . [or] fantastic government manipulations of their will or mind") (citations and internal quotation marks omitted); Crisafi v. Holland, 655 F.2d 1305, 1307-08 (D.C. Cir. 1981) ("A court may dismiss as frivolous complaints . . . postulating events and circumstances of a wholly fanciful kind."). At the very least, this claim is insufficiently pled and should be dismissed.

## VI. Recommendation

For the foregoing reasons, the undersigned recommends that the Respondent's Motion to Dismiss or in the Alternative, Motion for Summary Judgment [ECF No. 20] be **GRANTED**, and the petition [ECF No. 1] be **DENIED** and **DISMISSED with prejudice**. Further, the undersigned recommends that the Petitioner's pending Motion and Affirmation to a[n] Unlawful Aggregated Misdemeanor Consecutive Sentence to a Felony Sentence Judgment and Commitment Order, as Evidence in Support and Affidavit, or in the Alternative, as a Summary Judgment and Proof of Claim [ECF No. 26] be **DENIED as moot**.

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those

portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.** 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985): <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984).

Pursuant to pursuant to Federal Rule of Civil Procedure 25(d)(1), the Clerk of Court is **DIRECTED** to substitute Jennifer Saad, the current Warden of FCI Gilmer for Charles Williams, the former Warden of FCI Gilmer, as Respondent in this case.

The Clerk is further directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to transmit a copy electronically to all counsel of record.

DATED: February 1, 2017

/s/   James E. Seibert\
JAMES E. SEIBERT\
UNITED STATES MAGISTRATE JUDGE